IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 13, 2000

## STATE OF TENNESSEE v. JOSH MOON

**Appeal from the Circuit Court for Sevier County**
**No. 7642     Rex Henry Ogle, Judge**

---

**No. E2000-00690-CCA-R3-CD**
**March 6, 2001**

---

The defendant appeals from his Sevier County Circuit Court sentence for simple assault, a Class A misdemeanor. The trial court sentenced the defendant to eleven months and 29 days, with six months of the sentence to be served incarcerated in jail and the balance on supervised probation. The trial court ordered restitution to the victim in the amount of $18,700 for medical expenses. In this direct appeal, the defendant complains that he should have received full probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES, J., joined and NORMA MCGEE OGLE, J., did not participate.

Susanne Bales, Assistant Public Defender, Dandridge, Tennessee for the appellant, Josh Moon.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Al C. Schmutzer, Jr, District Attorney General; and Steven R. Hawkins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Josh Moon, appeals as of right from his Sevier County sentencing on his plea of guilty to simple assault, a Class A misdemeanor. *See* Tenn. Code Ann. § 39-13-101(a)(1) (1997). The defendant originally had been charged with aggravated assault, Tenn. Code Ann. § 39-13-102 (1997), but pursuant to a plea agreement, the charge was reduced to simple assault with an agreed sentence of eleven months and 29 days. The manner of service of this sentence was not encompassed in the plea agreement. The trial court accepted the defendant's plea and imposed a sentence of eleven months and 29 days, with the first six months to be served in the county jail followed by supervised probation. The defendant was ordered to pay costs and restitution to the victim for medical expenses in the amount of $18,700. In this appeal, he raises one issue: Whether

the trial court erred by requiring half of his eleven month, 29 day sentence to be served in custody. After a review of the record, the briefs of the parties, and the applicable law, we affirm the trial court's judgment and sentence.

The defendant was 23 years old when he viciously and senselessly attacked his former employer. The victim, Merle Ellison, performed masonry work. The defendant worked for Mr. Ellison, and Mr. Ellison advanced the defendant a portion of his paycheck in the amount of $80. After receiving this advance, the defendant promptly quit working for Mr. Ellison.

Believing that the defendant owed him the $80 that had been advanced, Mr. Ellison telephoned the defendant and asked that the money be repaid. Sometime thereafter, the defendant called Mr. Ellison and told Mr. Ellison to meet him at a nearby location. Believing that the defendant intended to repay the money, Mr. Ellison went to the appointed meeting spot. Instead of repaying Mr. Ellison, the defendant "settled" the matter by kicking Mr. Ellison in the groin and striking him in the face with sufficient force to break Mr. Ellison's right jaw in one place and his left jaw in two places. The evidence is unequivocal that Mr. Ellison did not retaliate or defend himself in any manner. The injuries that the defendant inflicted resulted in medical expenses to Mr. Ellison totaling approximately $18,700.

At the defendant's sentencing hearing, Mr. Ellison testified and submitted his medical bills from the attack. Mr. Ellison also explained to the trial court that after the defendant had pleaded guilty, he had been harassing Mr. Ellison and his family. The harassment, on one occasion, involved trying to run Mr. Ellison off of the road, and Mr. Ellison had sworn out a warrant against the defendant for that conduct. The evening before the sentencing hearing, the defendant had been harassing the Ellisons by driving a truck back and forth in front of their residence.

The defendant did not testify at his sentencing hearing. He called a friend, Kenneth Smith, to testify that he had received multiple telephone calls from Mr. and Mrs. Ellison who were trying to locate the defendant. Mr. Smith testified that the night before the defendant was arrested, Mr. Ellison and his wife drove to Mr. Smith's home, blew their truck horn, and said that they wanted to talk to the defendant. After speaking with another person at the house, the Ellisons left without causing a disturbance.

The defendant's mother testified at the sentencing hearing. She denied that her son had her boyfriend's truck at the time Mr. Ellison was claiming that the defendant was out driving past the Ellison residence repeatedly. She was not asked any other questions about her son.

The defendant's criminal history reflects that he has been arrested on at least four occasions in California in 1994. Those arrests resulted in convictions for disorderly conduct by being under the influence of drugs, two counts of battery, two counts of making annoying telephone calls, and providing false identification to a police officer.

At the conclusion of the sentencing hearing, the trial court ordered the defendant to pay restitution to Mr. Ellison for his medical bills, to serve six months of his sentence in jail with the balance on supervised probation, and to attend anger management counseling. In imposing the sentence, the trial court expressed concern with the defendant's inability to control his anger as evidenced by the brutal assault on Mr. Ellison, which had its genesis in an $80 debt. Based on the defendant's criminal record, the serious bodily injury to Mr. Ellison, and the totally unnecessary actions of the defendant, the trial court concluded that six months confinement was appropriate.

On appeal, the defendant argues that he is entitled to a sentence of full probation, rather than six months confinement followed by supervised probation. According to the defendant, "warehousing" him for six months is not in his best interests or the best interests of society. If not confined, the defendant says that he can earn income and can pay a portion of it toward restitution. The victim would receive more money, the defendant claims, and incarceration is unnecessary to rehabilitate him or deal with anger management. We reject the defendant's arguments and affirm the trial court's imposition of a sentence of eleven months and 29 days, with six months to be served in jail and the balance served on supervised probation.

In felony sentencing, the trial court has an affirmative duty to state on the record, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. §§ 40-35-209(c), - 210(f) (Supp. 2000); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998); *State v. Russell*, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999). By contrast, the misdemeanor sentencing statute does not require explicit findings; it specifies only that the trial court "consider" the enhancement and mitigating factors when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. § 40-35-302(d) (Supp. 2000); *Troutman*, 979 S.W.2d at 274; *Russell*, 10 S.W.3d at 278. The statutory scheme is designed to provide the trial court with continuing jurisdiction in the misdemeanor case and a wide latitude of flexibility. Additionally, the misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. *See State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

For misdemeanor sentencing, the trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn Code Ann. § 40-35-302(e) (Supp. 2000). In determining whether to grant probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record and potential for rehabilitation, the defendant's background and social history, present condition, including physical and mental condition, the deterrent effect on other criminal activity, and the likelihood that probation is in the best interests of both the public and the defendant. *See, e.g.*, *State v. Hayes*, 29 S.W.3d 1 (Tenn. 2000); *Stiller v. State*, 516 S.W.2d 617, 620 (Tenn. 1974)

Although not obligated to do so, the trial court in this case gave several reasons why it was ordering the defendant to serve six months confinement. We have examined those reasons and find them adequate and proper to justify the sentence imposed. The serious bodily injury to Mr. Ellison over nothing more than $80 goes to the nature and circumstances of the offense. The

aggravated nature of the unprovoked attack is a legitimate and influential consideration regarding whether to grant full probation. Full probation would, undoubtedly, demean the egregious, inexcusable, and gratuitous pain and suffering visited upon Mr. Ellison by the defendant. Furthermore, the defendant's prior record, coupled with his actions in this case, evidence his poor prospects at rehabilitation. According to a criminal history report, the defendant has previously received the benefit of probated sentences; nevertheless, those experiences have not had a positive effect on the defendant's impulse control or anger management problems.

The defendant's plea that he can earn more income to pay restitution to Mr. Ellison if he is not incarcerated is a lame excuse that finds no sympathetic corner with the court. Mr. Ellison's remedies regarding the restitution that has been ordered are not impaired by the defendant serving a portion of his sentence incarcerated in jail. Any unpaid balance of the restitution remaining at the expiration of the defendant's sentence can be converted into a civil judgment that is "enforceable by the victim or the victim's beneficiary in the same manner and to the same extent as other civil judgments are enforceable." *See* Tenn. Code Ann. § 40-35-304(h) (Supp. 2000).

One final matter that must be addressed concerns the judgment form. The judgment form is blank as to the percentage of the sentence which the defendant shall serve and after which the defendant is eligible for work release, furlough, trusty status, and related rehabilitative programs. *See* Tenn. Code Ann. § 40-35-302(d) (Supp. 2000).

When the trial court designates no percentage of service of a misdemeanor sentence, the statute mandates a percentage of zero. *Id.* However, the statutory mandate does not apply when the trial court clearly intended to impose a period of continuous confinement. *Russell*, 10 S.W.3d at 278. In the present case, the trial court clearly intended that the defendant serve six months in continuous confinement. Therefore, we amend the judgment to reflect a service percentage of 50 percent. As such, the defendant will serve six months in continuous confinement, after which he will be eligible for rehabilitative programs, although his placement *on probation* after serving six months renders superfluous the eligibility for rehabilitative programs. *See id.*

We once again take the opportunity to encourage trial courts to ensure that misdemeanor judgment forms are fully completed, especially the blanks for indicating the percentage of service.

For the foregoing reasons, we affirm the trial court's judgment and sentencing.

_____
JAMES CURWOOD WITT, JR., JUDGE